**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAQUAN DONTE RAMSEY,<br><br>                             Petitioner,<br><br>v.<br><br>JEFF MACOMBER, *Secretary of the California Department of Corrections and Rehabilitation*,<br><br>                             Respondent. | Case No.: 3:21-cv-00365-AJB-VET<br><br>**REPORT AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS** |

This Report and Recommendation is submitted to United States District Judge Anthony J. Battaglia pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(d) and 72.3(e).

**I.     INTRODUCTION**

On March 1, 2021, Jaquan Donte Ramsey ("Petitioner") filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254. ECF No. 1. After the Court twice dismissed the Petition and reopened the case, *see* ECF Nos. 5, 7, 9, 12, Respondent filed a response on December 29, 2023. ECF No. 20. Petitioner filed a traverse on June 26, 2024. ECF No. 32. Having considered the parties' arguments, applicable law, and the record

before it, and for the reasons discussed below, the undersigned **RECOMMENDS** that the Petition be **DENIED**.

## II.     FACTUAL BACKGROUND

### A.     The Underlying Incident

Petitioner and the victim began dating in January 2017. *People v. Ramsey*, No. D074105, 2019 Cal. App. LEXIS 6232, at *2 (Cal. App. Sept. 19, 2019). By April 2017, the couple moved into Petitioner's mother's home in Fontana, CA. *Id.* The victim worked as a prostitute prior to her relationship with Petitioner. *Id.* at *2–3.

On August 28, 2017, the victim took her belongings and went to a hotel in Riverside, CA, where her friend was staying. *Id.* at *4. They both used the room for prostitution. *Id.* The victim subsequently texted Petitioner that their relationship was over. *Id.* Petitioner went to the Riverside hotel and threatened the victim to come out or he would come in. *Id.* The victim left the room around midnight. *Id.* at *4–5. An altercation subsequently ensued between Petitioner, the victim's cousin, and the victim's john, and police were called. *Id.* at *5. The victim was on probation and had an arrest warrant, so she got into Petitioner's car with Petitioner, her cousin, and her cousin's girlfriend. *Id.* They went to the victim's aunt's house in Chula Vista, CA. *Id.*

Petitioner, the victim, and the victim's sister left the aunt's house on August 29, 2017, to drive to an apartment complex in Spring Valley, CA. *Id.* While driving, Petitioner and the victim got into an argument over the victim prostituting in San Diego. *Id.* Petitioner parked the car, and the victim got out and began running down the street. Petitioner chased the victim and forced her back into the front passenger seat. *Id.* at *5–6. Petitioner pulled out a gun and pointed it at the victim's head as she tried to push him away. *Id.* at *6. They continued arguing and the commotion caught the attention of nearby construction workers, one of whom saw Petitioner "being extremely violent" with the victim and "jerking her around" by the arm. *Id.* The victim testified that Petitioner said something like, "bitch, I'm going to kill you." *Id.* The victim continued to fight to get the gun away from her head, but Petitioner was able to hold the gun to her head twice more. *Id.* The gun went off and a

2

bullet went through the victim's right hand, grazed her breast, and then entered her left arm. *Id.*

The Petitioner pulled the victim out of the car, wrapped something around her arm, and asked the construction workers for help. *Id.* at *6–7. A construction worker saw Petitioner conceal the gun in a rag, hide it, and walk away from the scene. *Id.* Police located Petitioner about an hour after the shooting in an apartment complex nearby and arrested him. *Id.* Petitioner argued that the shooting was accidental and the argument that precipitated the shooting was about a cigarette lighter and lack of sleep, not the victim's refusal to work as a prostitute for Petitioner. *Id.* at *8, 11, 25.

### B.    Pre-Trial Rulings

Before trial, the prosecution moved to admit evidence of prior acts of domestic violence by Petitioner against the victim and his ex-wife. *Ramsey*, 2019 Cal. App. LEXIS 6232, at *9. According to the prosecution, the victim had "described prior incidents where [Petitioner] punched and hit her all over her body and left marks" and that "much of it was done in front of his mother, who would intervene on her behalf." *Id.* At the motion hearing, the prosecution further explained that the victim's mother described an incident where Petitioner brandished a gun at the mother and victim a few weeks before the shooting. *Id.* at *10. The prosecution also intended to seek testimony from the victim that Petitioner was trying to force her to prostitute for him, explaining as follows: "When they were in the car, they were arguing first over a cigarette and then her prostituting for him; and the context was her being a bad mom for being a prostitute. But the only reason she was prostituting, according to her, is because he was forcing her into that situation based on the prior violence." *Id.* at *24.

The trial court excluded evidence of prior acts concerning Petitioner's ex-wife. *Id.* at *11. However, the trial court was inclined to admit all information about the relationship between Petitioner and the victim, including information regarding prostitution, prior acts between them, and the brandishing incident the victim's mother allegedly saw, noting that

3:21-cv-00365-AJB-VET

the jury was entitled to understand the relationship in its entirety because of its relevance to whether Petitioner intentionally fired the gun. *Id.* at \*10–11.

Petitioner's counsel maintained that any evidence of prostitution was highly irrelevant to the case and suggested an evidentiary hearing under California Evidence Code § 402 to determine admissibility.[1] *Id.* at \*11. The trial court rejected Petitioner's position, as it was the prosecution's theory that the victim's refusal to work for Petitioner was the basis for the argument before the shooting. *Id.* at \*12. The trial court further ruled that a Section 402 hearing was unnecessary because if the victim denied the argument was about Petitioner forcing her to prostitute, the prosecution would have to live with that answer. *Id.* Moreover, if the prosecution believed that the prostitution aspect was a large component of the relationship, "then they, likewise, [would] have to suffer whatever prejudicial consequence may be from [the victim's] extensive cross with regard to [the victim's felony] history as well on that issue." *Id.*

## C.    Trial and Conviction

### 1.    Testimony from Victim

Based on the prosecution's theory that Petitioner wanted the victim to prostitute to earn money for him, and the victim's refusal led to violence on several occasions during the relationship, the prosecutor elicited testimony from the victim regarding prior incidents of violence. *Ramsey*, 2019 Cal. App. LEXIS 6232, at \*3. The victim testified to four specific incidents on direct examination at trial. *Id.* at \*3–4, 14–15.

First, the victim testified that three months into the relationship, she received a text from a former john while she was in the car with Petitioner. *Id.* at \*3, 14. Petitioner parked the car, got out, walked around to the passenger side, and punched the victim in the face through the open window. *Id.* Petitioner's counsel asked for a sidebar, where he asserted

---

[1] Cal. Evid. Code § 402 provides, in relevant part, that the "[t]he court may hear and determine the question of the admissibility of evidence out of the presence or hearing of the jury." Cal. Evid. Code § 402(b).

that he was not provided discovery relating to this punching incident. *Id.* at *14–16. The court allowed the direct examination to continue but agreed to hear argument on the objection outside the presence of the jury. *Id.* at *16. The victim testified she had never reported, nor told anyone about the punching incident. *Id.* at *14.

Second, the victim testified that on a separate occasion Petitioner ripped her clothes off and left marks on her chest during an argument. *Id.* at *14. Afterwards, the victim said she wanted to leave the relationship, but Petitioner threatened to beat her up whenever she brought up leaving. *Id.* at *14–15. Third, she testified that a few weeks before the shooting, the victim and Petitioner argued over her prostituting, so the victim and her mother got into a car to leave. *Id.* at *3, 15. Petitioner punched the car window and then ran inside, got a gun, and brandished the weapon, while the victim drove away. *Id.* at *3–4, 15. Lastly, the victim testified that a few days before the shooting, at Petitioner's mother's house, Petitioner ripped the victim's clothes off her and choked her with a belt. *Id.* at *4, 15. The victim stated she had not reported these incidents to the police. *Id.* at *14.

At the next break, outside the jury's presence, Petitioner's counsel objected to the victim's testimony concerning the punching incident and the choking incident, arguing that he was not made aware of these incidents, through discovery or otherwise, as required by California Penal Code § 1054.7 and California Evidence Code § 1109. *Id.* at *16. While there was pre-trial motion practice about prior acts of domestic violence between Petitioner and the victim, these two specific incidents were not raised during those proceedings. Thus, in response to Petitioner's objection, the prosecution noted that the victim had not been forthcoming with details, and it provided the defense with all the information it had in discovery. *Id.* Because there were no reports on these incidents, and the victim did not disclose the incidents to the prosecution prior to trial, the court overruled Petitioner's objection to this evidence. *Id.* at *16–17 (finding that "'there was no affirmative obligation on the People to continue examining [the] witness to see if they could get even more detail than they had already received' and that the People had not intentionally withheld any information").

3:21-cv-00365-AJB-VET

On direct examination, the victim further testified that Petitioner tried to force her to prostitute for him, and when she refused, he was violent with her. *Id.* at \*26. She testified that prior to the shooting, she and Petition were arguing because Petitioner "wanted her to prostitute to earn money for him and she did not want to because she was a mother and was worried about getting arrested." *Id.* She further denied ever prostituting for Petitioner. *Id.* On cross examination, Petitioner's counsel impeached the victim "with a prior statement she made to police in a recorded interview the day after the shooting," wherein she admitted to working for Petitioner "as a prostitute a few times in the past." *Id.*

The victim also testified to Petitioner's cocaine use. *Id.* at \*29. Specifically, after admitting to using "meth" during the relevant time period, the prosecutor asked the victim whether Petitioner was "using anything?" *Id.* Petitioner's attorney objected. *Id.* The trial court asked the prosecutor to restate the question. The prosecutor then asked, "Would [Petitioner] also use meth with you?" *Id.* Petitioner's attorney objected again based on relevance and improper character evidence. *Id.* at \*28–29. The court overruled the objection and the victim testified: "No. [Petitioner] would use coke." *Id.* at \*29. The prosecutor then asked if the victim and Petitioner used drugs together and the victim responded, "Yes." *Id.* In her closing argument, the prosecutor referenced Petitioner's drug use once: "the victim found herself in a relationship with this guy. He's carrying a loaded gun, and they are doing drugs and prostituting." *Id.*

### 2.    Testimony from Detective Guadalupe Catano

The prosecution also called detective Guadalupe Catano ("Catano") to testify. *Ramsey*, 2019 Cal. App. LEXIS 6232, at \*30. The day after the victim was shot, Catano and another detective interviewed the victim in the hospital and recorded the interview. *Id.* On direct examination, the prosecutor asked Catano about the interview and Catano testified, in part, as follows: "[the victim] told me that [Petitioner] had beat her in front of his mom; and his mom, I guess — his mom must have felt really bad. [Petitioner]'s mom told [the victim] that she should leave him because if not, he was going to kill her." *Id.* Petitioner's attorney did not object to this testimony during direct examination. *Id.*

6

On cross examination, Petitioner's attorney impeached Catano with a transcript of the recorded interview, showing that Petitioner's mother did not tell the victim that Petitioner would kill her. *Id.* at *30–31. Instead, Petitioner's mother only told the victim that she should leave. *Id.* Catano then testified that she thought there was another place in the transcript where the victim had said "the mom and her family members were telling her to leave [Petitioner] or he was going to kill her." *Id.* at *31.

The prosecution moved to admit into evidence the victim's recorded interview in its entirety. *Id.* Petitioner's counsel objected, arguing that the interview was cumulative and hearsay. *Id.* The trial court admitted the interview for the non-hearsay purpose of showing the victim's state of mind. *Id.* The court ordered the parties to highlight the statements in the interview transcript that were not being admitted for the truth of the matter asserted and then gave the jury a limiting instruction. *Id.* at *31–32. The court explained to the jury that they could not consider the highlighted portions for their truth but only their effect on the victim in what she did or said "during the course of the action." *Id.* at *32. The recorded interview was played for the jury and the jury was provided the highlighted transcript. *Id.* In the transcript, the victim's statement that "everybody kept saying the[y] felt like . . . [Petitioner] was gonna kill me" was highlighted. *Id.*

### 3. Conviction

The jury convicted Petitioner for attempted murder (Pen. Code, §§ 187, subd. (a), 664, Count 1), assault with a semi-automatic firearm (Pen. Code, § 245, subd. (b), Count 2), corporal injury to a spouse (Pen. Code, § 273.5, subd. (a), Count 3), and making a criminal threat (Pen. Code, § 422, Count 4). *Id.* at *1. With respect to Count 1, the jury found true the enhancement allegations that Petitioner personally inflicted great bodily injury (Pen. Code, § 12022.7, subd. (e)), personally and intentionally discharged a firearm (Pen. Code, § 12022.53, subd. (c)), and personally and intentionally discharged a firearm causing great bodily injury (Pen. Code, § 12022.53, subd. (d)). *Id.* With respect to Counts 2–4, the jury found that Petitioner personally used a firearm (Pen. Code, § 12022.5, subd. (a)) and personally inflicted great bodily injury (Pen. Code, § 12022.7, subd. (e)).

*Ramsey*, 2019 Cal. App. LEXIS 6232, at *1–2. The trial court sentenced Petitioner to 30 years in prison. *Id.* at *2.

### D.    California Court of Appeal

The Court of Appeal upheld Petitioner's convictions. *Ramsey*, 2019 Cal. App. LEXIS 6232, at *2. On appeal, Petitioner claimed that the trial court erred by (1) admitting evidence of two instances of prior domestic violence against the victim (the punching and choking incidents), unknown to his counsel prior to trial; (2) admitting evidence of Petitioner's prior pimping;[2] (3) admitting the victim's testimony that Petitioner previously used cocaine; and (4) admitting hearsay testimony by the victim to an investigating detective. *Id.* Petitioner further argued that even if these errors individually were not sufficient to overturn the jury's verdict, cumulatively they required reversal. *Id.*

The Court of Appeal found no abuse of discretion in allowing evidence of the punching and choking incident under California Evidence Code §§ 1109 and 352. *Id.* at *23. The appellate court explained that Section 1109 is limited to evidence "that is expected to be offered." *Id.* at *22. Because the record supported the trial court's finding that the prosecutor disclosed all the information she had about the prior acts of domestic violence against the victim, there was no violation. *Id.* There was also no unfair advantage created by the new testimony as both the prosecution and the defense were required to adjust to the new information. *Id.* Furthermore, California Evidence Code § 1109 and Penal Code § 1054.7 did not require detailed statements of the exact testimony a witness is expected to provide. *Id.* at *23. The appellate court reasoned that the prosecution's disclosure in motion in limine—"that the victim had 'described prior incidents where [Petitioner had] punched and hit her all over her body and left marks' and that 'much of it was done in front of his mother' . . ."—was sufficient to cover the two prior incidents at issue. *Id.*

---

[2]    The appellate court did not include this claim in their introductory list but addressed this claim at *26–27.

The Court of Appeal further found that there was no abuse of discretion in allowing evidence of Petitioner's prior pimping acts as it was the defense that introduced this evidence through impeachment, effectively waiving an evidentiary challenge. *Id.* at *27. Moreover, the appellate court found that California Evidence Code §§ 1101 and 1109 did not govern the admissibility of the victim's testimony on this topic and this evidence was directly relevant to whether Petitioner intended to shoot the victim. *Id.* at *28.

As to the admission of Petitioner's prior cocaine use, the appellate court concluded that this evidence was not unfairly prejudicial as the prosecutor did not rely on the evidence or relate it to Petitioner's crimes in her closing. *Id.* at *29. Further, there was no reasonable probability that the jury would have reached a different verdict in the absence of this evidence. *Id.*

Finally, the Court of Appeal held that the trial court did not err in admitting the victim's statements through Catano's testimony and the recorded interview. *Id.* at *33–35. As Petitioner's counsel did not object to double hearsay during Catano's testimony and instead chose to use this testimony to his advantage, Petitioner effectively forfeited this claimed error for purposes of appeal. *Id.* at *33–34. Moreover, the appellate court found that the recorded interview was admissible for the nonhearsay purpose of effect on the victim. *Id.* at *34. Because the prosecution had to prove the victim feared for her life, the victim being told that Petitioner would kill her, regardless of the truth, was highly relevant to support the inference that the victim feared for her safety on the day of the shooting. *Id.* at *34–35. Given that the trial court also gave a limiting jury instruction regarding use of this evidence, the instruction mitigated the risk that the jury would improperly consider the statement for its truth. *Id.* at *35. Even if there was error, the verdict would not have been different if the hearsay testimony had been excluded because there was ample other evidence to support the fact that the victim feared what Petitioner would do to her if she stayed in the relationship. *Id.* at *36.

3:21-cv-00365-AJB-VET

The California Court of Appeal did not analyze Petitioner's fifth claim of cumulative error, finding that it was unnecessary since there were no individual errors, and as such, there could be no cumulative error. *Id*. at *12, n.7.

Petitioner appealed to the California Supreme Court, which denied discretionary review. *People v. Ramsey*, No. S258826, 2019 Cal. LEXIS 9486, at *1 (Dec. 18, 2019).

### E.    The Instant Petition

Petitioner now seeks federal habeas relief. Petitioner claims he was denied a fair trial and asks the Court to reverse his conviction and remand for a new trial based on the following five issues: (1) improper admission of two prior domestic violence incidents under California Evidence Code §§ 1109 and 352; (2) improper admission of Petitioner's prior pimping acts under California Evidence Code §§ 1109 and 352; (3) improper admission of Petitioner's prior cocaine use under California Evidence Code §§ 1101 and 350; (4) improper admission of victim's hearsay statement under California Evidence Code §§ 1201, 1250, and 1252, based in part on the allegedly ineffective assistance of counsel; and (5) the allegedly cumulative prejudicial effect of each error. ECF No. 1 at 25–26.

### III.    STANDARD OF REVIEW

This Court can entertain an application for a writ of habeas corpus by a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Kasianov v. Gamnoa*, No. 2:22-cv-2324 CKD P, 2025 U.S. Dist. LEXIS 167131, at *5 (E.D. Cal. Aug. 27, 2025). Habeas relief is not available for errors involving the interpretation or application of state law. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.2d 1146, 1149 (9th Cir. 2000). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Wilson*, 562 U.S. at 5 (quoting *Estelle*, 502 U.S. at 67–68).

Moreover, federal courts may grant habeas relief for claims "adjudicated on the merits in [s]tate court proceedings," only if the state court's adjudication of the claim:

3:21-cv-00365-AJB-VET

"(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Critically, Section 2254(d) "does not repeal the command of § 2254(a) that habeas relief may be afforded to a state prisoner "only on the ground" that his custody violates federal law. *Wilson*, 562 U.S. at 6; *see also Fry v. Pliler*, 551 U.S. 112, 119 (2007) (§ 2254(d) "sets forth a precondition to the grant of habeas relief . . ., not an entitlement to it."); *Frantz v. Hazey*, 533 F.3d 724, 735–36 (9th Cir. 2008) (en banc).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are distinct. A state court's decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). A state court's decision is an "unreasonable application of clearly established federal law" if it is "objectively unreasonable," and not just "incorrect or erroneous." *Williams v. Taylor*, 529 U.S. at 389, 409–10. However, a state court decision cannot be contrary to or an unreasonable application of clearly established federal law unless there is clearly established federal precedent. *See Brewer v. Hall*, 378 F.3d 952, 955–56 (9th Cir. 2004). "A Supreme Court precedent is not clearly established law under section 2254(d)(1) unless the Court 'squarely addresses the issue' in the case before the state court." *Jimenez v. Campbell*, No. 1:24-cv-00840-KES-SKO, 2025 U.S. Dist. LEXIS 85438, at *5–6 (E.D. Cal. May 5, 2025) (citing *Wright v. Van Patten*, 552 U.S. 120, 125–26 (2008)); *see also Murdoch v. Castro*, 609 F.3d 983, 991 (9th Cir. 2010) ("[W]hen a state court may draw a principled distinction between the case before it and Supreme Court caselaw, the law is not clearly established for the state-court case."); *White v. Woodall*, 572 U.S. 415, 426 (2014) ("'[I]f a habeas court must

extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state court decision.'") (citation omitted).

As to § 2254(d)(2), "a state court's ruling based on a factual determination must be 'objectively unreasonable in light of the record' to warrant habeas relief." *Baez v. Muniz*, No. C-15-01722-WHA, 2016 U.S. Dist. LEXIS 63040, at *18–19 (N.D. Cal. May 12, 2016) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003)). A federal court may not "characterize [] state-court factual determinations as unreasonable 'merely because [we] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain*, 576 U.S. 305, 313–14 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). "Instead, § 2254(d)(2) requires that [federal courts] accord the state trial court substantial deference." *Brumfield*, 576 U.S. at 314. "[E]ven if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'" *Wood*, 558 U.S. at 301 (quoting *Rice v. Collins*, 546 U.S. 333, 341–42 (2006)).

"[F]ederal habeas relief may only be met with reference to the evidence in the record before the state court." *Kipp v. Davis*, 971 F.3d 939, 949 (9th Cir. 2020) (citing *Cullen v. Pinholster*, 563 U.S. 170, 181–83 (2011)). Moreover, the Court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011). Here, the last reasoned decision is that of the California Court of Appeal. *See Ramsey*, 2019 Cal. App. LEXIS 6232, at *5.

## IV.   DISCUSSION

### A.   Evidentiary Claims

As noted, Petitioner asserts four claims that stem from evidentiary rulings. First, Petitioner claims the trial court abused its discretion under California Evidence Code §§ 1109 and 352, and violated federal due process, by admitting allegedly irrelevant and highly inflammatory details of the two previously undisclosed domestic violence incidents ("Claim 1"). The two incidents—when Petitioner (1) punched the victim in the face through an open car window and (2) ripped her clothes off and choked her with a belt—

were not disclosed to the defense before trial. Petitioner claims California Evidence Code § 1109(b) required disclosure by the prosecution before trial and California Evidence Code § 352 required that the trial court engage in a carful weighing before admitting such evidence. ECF No. 1 at 43–46. As neither allegedly occurred, Petitioner argues that the trial court erred in its application of California evidentiary rules and abused its discretion by admitting the evidence. *Id*. at 46–49.

Second, Petitioner argues that the admission of evidence of his alleged prior primping acts was highly prejudicial and violated California Evidence Code §§ 1109(a) and 352 and federal due process ("Claim 2"). *Id*. at 67. Third, Petitioner argues that the trial court abused its discretion under California Evidence Codes §§ 350 and 1101 by admitting irrelevant "character" evidence of Petitioner's prior cocaine use ("Claim 3"). *Id*. at 85. Fourth, Petitioner claims the trial court erred by admitting the following "hearsay" testimony: (i) Catano's testimony that the victim said Petitioner's mother told the victim that Petitioner was going to kill the victim if she did not leave Petitioner; and (ii) the victim's out-of-court interview statement that "everybody kept saying the[y] felt like either he was gonna kill me or something bad was gonna happen because of him" ("Claim 4"). *Id*. at 91–92.

State court evidentiary rulings are subject to analysis under the Fourteenth Amendment Due Process Clause. *See Andrew v. White*, 604 U.S. 86, 88 (2025). This Court, however, may not consider whether the ruling complied with state law. *Estelle*, 502 U.S. at 71; *Walden v. Shinn*, 990 F.3d 1183, 1205 (9th Cir. 2021) ("we cannot grant federal habeas relief founded on an alleged non-constitutional state evidentiary error"). Therefore, to the extent Petitioner argues that the evidentiary rulings violated California law, including California Evidence Code §§ 350, 352, 1101, 1109 1201, 1250, and 1252, his claims are not cognizable. *See* ECF No. 1 at 43–55, 73–81, 86–91, 94–101; *see also Sean Ray v. Lynch*, No. 2:22-cv-06925-PA (ADS), 2025 U.S. Dist. LEXIS 127488, at *53 (C.D. Cal. June 9, 2025) (claim that evidentiary rulings admitting out-of-court statements were improper under state law is not cognizable on federal habeas review); *Morales v. Sexton*,

13

No. CV 17-04179-R (DFM), 2018 U.S. Dist. LEXIS 181915, at *23 (C.D. Cal. Aug. 17, 2018) ("Any contention that admitting the challenged evidence violated California evidentiary law is not a cognizable federal habeas claim.").

To the extent Petitioner asserts any federal due process violations, the Supreme Court recently clarified that "when evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." *Andrew*, 604 U.S. at 86; *see also Payne v. Tennessee*, 501 U.S. 808, 825 (1991) (holding that admission of prejudicial evidence constitutes a due process violation where it renders the trial fundamentally unfair). Thus, on federal habeas review, the court examines "whether a fairminded jurist could disagree that the evidence 'so infected the trial with unfairness' as to render the resulting conviction or sentence 'a denial of due process.'" *Andrew*, 604 U.S. at 96.

In evaluating fundamental unfairness, the Court may consider, among other things: (1) "the relevance of the disputed evidence to the charges or sentencing factors," (2) the degree of prejudice the petitioner suffered from the evidence's introduction, and (3) "whether the trial court provided any mitigating instructions." *Andrew*, 604 U.S. at 96. Still, it is not enough for Petitioner to argue that the admission of evidence was mistaken or erroneous. *See Crane v. Kentucky*, 476 U.S. 683, 689 (1986) (noting "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts;" since a "trial judge is called upon to make dozens, sometimes hundreds, of decisions concerning the admissibility of evidence" in any given criminal case). "Evidence introduced by the prosecution will often raise more than one inference, some permissible, some not; . . . Only if there are no permissible inferences the jury may draw from the evidence can its admission violate due process. Even then, the evidence must 'be of such quality as necessarily prevents a fair trial.'" *Jammal v. Van De Kamp*, 926 F. 2d 918, 920 (9th Cir. 1991) (emphasis omitted) (quoting *Kealohapauole v. Shimoda*, 800 F.2d 1463, 1465 (9th Cir. 1986)). Furthermore, the erroneous admission of evidence does not support federal habeas relief unless the evidence "had substantial and injurious effect or influence

14

in determining the jury's verdict." *See Jackson v. Brown*, 513 F.3d 1057, 1082 (9th Cir. 2008); *Moses v. Payne*, 555 F.3d 741, 755 (9th Cir. 2009). A habeas petitioner "bears a heavy burden in showing a due process violation based on an evidentiary decision." *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005).

Guided by these principles, the Court examines each evidentiary ruling in turn.

### 1.    Claim 1 – Evidence of Two Prior Domestic Violence Incidents

As to Claim 1, Petitioner's federal due process argument focuses on the prosecution's purported failure to disclose the domestic violence evidence prior to trial. ECF No. 1 at 45–46. However, as the Court of Appeal concluded, the prosecution disclosed prior to trial all the available information concerning prior acts of domestic violence. *Ramsey*, 2019 Cal. App. Unpub. LEXIS 6232, at *22. Petitioner does not demonstrate or even argue that the prosecution in fact knew of the two incidents prior to trial. Also, because the parties learned of the evidence at the same time during trial, the prosecution did not have any unfair advantage. *Id*.

Further, under California law, specifically California Evidence Code § 1109, evidence of prior acts of domestic violence is relevant to domestic violence crime. *Id*. at *18; *see also Zuniga v. Pfeiffer*, No. 5:19-cv-01315-MWF (AFM), 2019 U.S. Dist. LEXIS 227515, at *16 (C.D. Cal. Oct. 2, 2019) ("In enacting § 1109, the California Legislature determined that evidence of such prior acts of domestic violence is highly relevant and admissible, despite the potential for prejudice, and it is not this Court's province to second-guess such state Legislative prerogative.") (internal citations omitted). That same law permits a jury to draw an inference of propensity to commit domestic violence in recognition that one battering episode is frequently part of a larger scheme of dominance and control and an escalating pattern of domestic violence. *Ramsey*, 2019 Cal. App. Unpub. LEXIS 6232, at *18; *Morales*, 2018 U.S. Dist. LEXIS 181915, at *23-24 (holding that evidence that the petitioner engaged in domestic violence on past occasions gave rise to a permissible inference that he had a propensity to commit domestic violence and, therefore, was more likely to have committed the charged act of domestic violence); *Zuniga*, 2019

3:21-cv-00365-AJB-VET

U.S. Dist. LEXIS 227515, at *16 ("section 1109 of the California Evidence Code . . . permits the jury to consider a defendants other acts of domestic violence for the purpose of showing a propensity to commit such crimes"). Notably, California courts have upheld the facial constitutionality of California Evidence Code § 1109 and there is no Supreme Court authority holding that it is unconstitutional. *See, e.g.*, *People v. Johnson*, 77 Cal. App. 4th 410, 412 (2000); *People v. Jennings*, 81 Cal. App. 4th 1301, 1310 (2000) ("the constitutionality of section 1109 under the due process clauses of the federal and state constitutions has now been settled"); *Kasianov*, 2025 U.S. Dist. LEXIS 167131, at *8 ("The Supreme Court has not ruled as to the constitutionality as to California Evidence Code Section 1109."). Accordingly, the jury could permissibly infer from the domestic violence evidence that Petitioner had a propensity to commit domestic violence.

Additionally, this domestic violence evidence is no more inflammatory than the charged conduct of shooting the victim or other evidence of domestic violence, to which Petitioner does not object, including the incident involving Petitioner brandishing a weapon.

Under these circumstances, the Court finds that the admission of this domestic violence evidence did not render Petitioner's trial fundamentally unfair.

### 2.    Claim 2 – Evidence of Prior Pimping Acts

In Claim 2, Petitioner claims errors based on admission of the victim's testimony that (i) Petitioner previously tried to make the victim work as a prostitute and (ii) the victim did, in fact, prostitute for Petitioner. ECF No. 1 at 73. In asserting a violation of federal due process, Petitioner offers only the conclusory argument that this "prior pimping" evidence was not probative of any material issue and highly inflammatory. ECF No. 1 at 81–82. This conclusory assertion falls short of meeting Petitioner's burden of demonstrating fundamental unfairness. *Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995) ("It is well-settled that conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

3:21-cv-00365-AJB-VET

Nevertheless, in examining the evidence, the Court agrees with the Court of Appeal that the prior pimping evidence is not propensity evidence but rather evidence regarding the relationship between Petitioner and the victim, and the ongoing dispute between them that led to the shooting. Specifically, the victim's testimony that Petitioner had repeatedly tried to force her to prostitute for his benefit, and that this issue had led to Petitioner's violence in the past was highly probative of Petitioner's motive. More importantly, the jury could permissibly infer from this evidence that Petitioner intended to shoot the victim.

As to the victim's testimony that she prostituted for Petitioner in the past, Petitioner's attorney elicited this testimony on cross-examination in an effort to impeach the victim after she testified that she never prostituted for Petitioner. Petitioner's own introduction of this evidence cannot be the basis for a federal due process violation. *See Ohler v. United States*, 529 U.S. 753, 755 (2000). ("Generally, a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted.")

### 3.    Claim 3 - Evidence of Prior Cocaine Use

As to Claim 3, Petitioner argues that testimony of his alleged cocaine use was inadmissible under state law but does not otherwise assert any argument based on federal law, including federal due process. *See* ECF No. 1 at 85–91; *see also* ECF No. 32 at 2 (Traverse references only the California Evidence Code). Because Claim 3 is premised *exclusively* on issues of state law—whether the trial court violated California Evidence Code §§ 350 and 1101 and California case law by admitting the victim's single reference to Petitioner's cocaine use—without any alleged violation of federal law, Claim 3 is not cognizable in this federal habeas proceeding. *See McGuire*, 502 U.S. at 67–68 ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("federal habeas corpus relief does not lie for errors of state law"); *King v. California*, No. 2:12-cv-01228 DAD P, 2013 U.S. Dist. LEXIS 46187, at *5 (E.D. Cal. Mar. 27, 2013) (summarily dismissing action that challenged evidentiary rulings on state law grounds because it "plainly" appeared "from the face of the petitions that petitioner is not entitled to federal habeas relief").

17

3:21-cv-00365-AJB-VET

### 4.   Claim 4 - Admission of Hearsay Testimony

In Claim 4, Petitioner argues that the trial court erred by admitting multi-level hearsay evidence that the victim told detectives that "everybody kept saying [Petitioner] was going to kill her." ECF No. 1 at 91–92. This evidence came from two sources: (i) Catano's testimony that the victim told the detective that Petitioner's mom told the victim that she should leave Petitioner because "if not, he was going to kill her;" and (ii) the victim's recorded interview to detectives, a transcript of which was provided to the jury with certain statements highlighted. *Id*. at 92. According to Petitioner, none of this evidence falls under any valid hearsay exception. *Id*. at 95–99. Because Petitioner raises ineffective assistance of counsel arguments under the Sixth Amendment, the Court examines Claim 4. *Id.* at 102–103.

First, as to the admission of Catano's testimony, Petitioner procedurally defaulted this portion of Claim 4. A federal court lacks "jurisdiction when (1) a state court has declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds." *Fauber v. Davis*, 43 F.4th 987, 1002 (9th Cir. 2022) (quoting *Walker v. Martin*, 562 U.S. 307, 316 (2011)) "To qualify as independent, a state procedural rule must not rest primarily on federal law, or . . . be interwoven with the federal law." *Id.* (internal quotations omitted). "State rules count as adequate if they are firmly established and regularly followed." *Id.* (quoting *Johnson v. Lee*, 578 U.S. 605, 606 (2016) (per curiam)).

Under California law, a party must make a proper and timely objection at trial to preserve the argument on appeal. *See* Cal. Evid. Code. § 353; *People v. Ramos*, 15 Cal. 4th 1133, 1171 (1997). Here, the Court of Appeal found that Petitioner's counsel did not object to Catano's testimony. *Ramsey*, 2019 Cal. App. Unpub. LEXIS 6232, at *33–34. Instead, Petitioner's attorney elected to call into question Catano's credibility by impeaching her with a transcript of the victim's statement. *Id*. For this reason, the Court of Appeal held that Petitioner "forfeited this claimed error for purposes of appeal." *Id*. Thus, the Court of

Appeal invoked California's contemporaneous objection rule when it found that Petitioner waived this claim for failure to object in the trial court.

The Ninth Circuit has "repeatedly recognized California's contemporaneous objection rule as an 'adequate and independent state law ground' that forecloses" review. *Fauber*, 43 F.4th at 1002; *Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005) (applying California's contemporaneous objection rule to affirm denial of a federal petition on grounds of procedural default where there was a complete failure to object at trial); *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004) (same); *Vansickel v. White*, 166 F.3d 953, 957-58 (9th Cir. 1999) (same). Accordingly, Petitioner's failure to comply with California's contemporaneous objection rule resulted in a procedural default.

Still, the Court "may review a state court decision that rests on an adequate and independent state ground when a party has shown cause for the forfeiture and prejudice flowing from it." *Fauber*, 43 F.4th at 1002. "To show cause, a petitioner must point to 'some objective factor external to the defense [that] impeded his adherence to the procedural rule.'" *Id.* (quoting *United States v. Skurdal*, 341 F.3d 921, 925 (9th Cir. 2003)) (internal quotations omitted). Attorney error is not sufficient to excuse a procedural default unless the error rises to constitutionally ineffective assistance of counsel. *Id.*

Petitioner argues that no waiver occurred, but also claims, in the alternative, ineffective assistance of counsel. ECF No. 1 at 102. To support this contention, Petitioner must prove that his attorney's performance was deficient and prejudiced the defense, that is "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *see also Jackson*, 513 F.3d at 1082. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. In determining whether a defendant received ineffective assistance of counsel, the reviewing court "will neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight," but rather, will defer to counsel's sound trial strategy. *Id.* at 688; *see also Murtishaw v. Woodford*, 255 F.3d 926, 939–40 (9th

19

Cir. 2001) (applying the *Strickland* standard in the context of a federal habeas petition challenging a state court criminal proceeding).

The California Court of Appeal held that "the attorney's decision not to object does not support a claim for ineffective assistance of counsel because it was a strategic litigation decision." *Ramsey*, 2019 Cal. App. Unpub. LEXIS 6232, at *34. This Court agrees.

Starting with the performance prong, Petitioner's counsel made a strategic decision not to object to Catano's testimony. Indeed, rather than object, Petitioner's attorney elected to impeach Catano during cross-examination with a transcript of the recorded interview between Catano and the victim, showing the jury that the victim did not tell Catano that Petitioner's mom told the victim he was going to kill her and instead the victim only said that Petitioner's mom told her she should leave Ramsey. As the Court of Appeal noted, this cross-examination showed that "Catano was misremembering the exact contents of the interview and called her credibility into doubt." *Id*. at *33.

"Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel, and there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *People v. Lucas* 12 Cal. 4th 415, 436–37 (1995) (internal citations omitted). Moreover, "deciding whether to object is inherently tactical, and the failure to object will rarely establish ineffective assistance." *People v. Hillhouse*, 27 Cal. 4th 469, 502 (2002). The decision by Petitioner's attorney to not object was entirely reasonable, particularly considering the attorney's subsequent effort to impeach Catano's testimony. Thus, the Court does not find that the failure to object constitutes deficient performance. Because Petitioner cannot satisfy the performance prong, the inquiry can stop there.

Nevertheless, its bears noting that Petitioner similarly cannot establish the requisite prejudice. The Court is not persuaded that there is a reasonable probability that if counsel had objected to the testimony, the result of the proceeding would have been different. The jury ultimately heard the entire interview between Catano and the victim and could draw their own inferences about the reliability of Catano's testimony. Additionally, given all the

3:21-cv-00365-AJB-VET

other testimony about Petitioner's abuse of the victim, it is unlikely that objecting to this one hearsay statement would have reasonably changed the outcome of the proceedings. As such, this Court finds Petitioner is unable to prove ineffective assistance of counsel.

Second, as to the admission of the victim's interview, the trial court admitted the evidence not for the truth of the matter asserted but rather for the non-hearsay purpose of showing its effect on the victim and her state of mind. *Ramsey*, 2019 Cal. App. Unpub. LEXIS 6232, at *31. To support the charge of criminal threat under California Penal Code § 422, the prosecution had to prove that the victim feared for her life. As the Court of Appeal reasoned, "[t]he fact that the victim was told [Petitioner] would kill her, regardless of the truth of that statement, supported the inference that she feared for her safety on the day of the shooting." *Id*. at *35. The Court also agrees with the Court of Appeal that "[r]egardless of whether or not others actually believed that Petitioner was going to hurt or kill the victim (the truth of the matter asserted), the fact that she heard the statement supported an inference that she feared he would." *Id*.

Additionally, any arguable prejudice from the hearsay testimony was negated by the trial court's limiting instruction. *Samia v. United States*, 599 U.S. 635, 646 (2023) ("Evidence at trial is often admitted for a limited purpose, accompanied by a limiting instruction. And, our legal system presumes that jurors will attend closely the particular language of [such] instructions in a criminal case and strive to understand, make sense of, and follow them."). Specifically, the trial court instructed the jury not to consider the highlighted statement for its truth, *i.e.*, that others believed Ramsey would kill the victim, and instead should consider the statement for its "effect on the victim" and to "evaluate what she did or what she said during the course of the action the day of the shooting." *Ramsey*, 2019 Cal. App. Unpub. LEXIS 6232, at *32. This limiting instruction diminished the risk that the jury would improperly consider the statement for its truth.

Even without the victim's statement, there was ample evidence supporting the jury's findings. As noted by the Court of Appeal, the victim also testified at trial that "[Petitioner] physically abused her, that she was scared of him, [] that she made the decision to leave

21

[Petitioner] in the days before the shooting after he beat her in front of his mother . . . [and] that [Petitioner's] mother and cousin counseled her to leave him after that beating." *Id*. at *36. This evidence supported the conclusion that "the victim feared what [Petitioner] would do to her if she stayed in the relationship with him." *Id*. Based on the nonhearsay purpose for admitting the statement, the limiting instruction, and the significant evidence supporting the jury's verdict, the Court finds that the admission of the victim's statement did not render the trial fundamentally unfair.

In sum, for the reasons discussed above, the Court finds that the Court of Appeal's rejection of Petitioner's Claims 1 through 4 was not contrary to, and did not involve an objectively unreasonable application of, federal law and was not based upon an unreasonable determination of the facts in light of the evidence presented. Petitioner is not entitled to federal habeas relief on Claims 1, 2, 3, and 4. *See* 28 U.S.C. § 2254(d).

### B.      Culmination of Error Requiring Reversal

Lastly, Petitioner contends that even if each of the above claims constitutes harmless error, their cumulative prejudicial effect denied Petition a fair trial ("Claim 5"). ECF No. 1 at 103–105.

"Cumulative error applies where, although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors has still prejudiced a defendant." *Jackson*, 513 F.3d at 1085 (quoting *Whelchel v. Washington*, 232 F.3d 1197, 1212 (9th Cir. 2000)). "[T]he combined effect of multiple trial court errors violates due process where it renders the resulting trial fundamentally unfair." *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007) (citing *Chambers v. Miss.*, 410 U.S. 284, 298 (1973)). The cumulative error will render the trial fundamentally unfair where the combined errors have a "substantial and injurious effect or influence on the jury's verdict." *Parle*, 505 F.3d at 927 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). However, if "no error of constitutional magnitude occurred, no cumulative prejudice is possible" *Hayes v. Ayers*, 632 F.3d 500, 523–24 (9th Cir. 2011); *see also Waidla v. Davis*,

3:21-cv-00365-AJB-VET

68 F.4th 575, 599 (9th Cir. 2023) ("In assessing a cumulative error claim, we do not consider the prejudicial effect of nonexistent errors.").

Because no claim rose to the level of a constitutional error, the combined effect of Petitioner's claims cannot be cumulatively prejudicial. As such, Claim 5 does not provide a basis for habeas relief.

## IV.   CONCLUSION

In summary, based on the foregoing, **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order: (1) approving and adopting this Report and Recommendation; and (2) **DENYING** the Petition.

**IT IS HEREBY ORDERED** that on or before **March 31, 2026**, any party to this action may file and serve written objections to this Report and Recommendation. The document should be captioned "Objection to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to objections shall be filed and served within seven (7) days of the filing of the objections. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of this Order. *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: March 10, 2026

_____
Hon. Valerie E. Torres
United States Magistrate Judge

23

3:21-cv-00365-AJB-VET